UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ZURICH AMERICAN INSURANCE
COMPANY,
a New York corporation,

                Plaintiff,         Case No.

v.                               Hon.

AMERISURE INSURANCE COMPANY, and
CROWN CORR, INC.,

                Defendants.
                                      /

Peter B. Kupelian (P31812)
Douglas M. Chapman (P64469)
Attorneys for Plaintiff Zurich American
Insurance Company
Kupelian Ormond & Magy, P.C.
25800 Northwestern Highway, Ste. 950
Southfield, MI 48075
(248) 357-0000
                                      /



        **A civil action relating to this Complaint is currently pending in the Federal District Court for the Eastern District of Michigan, captioned *Lela Tompkins v. Detroit Metropolitan Airport d/b/a Wayne County Airport Authority, et al.*, Case No. 2:10-cv-10413-BAF-RSW.  This related case is currently pending before the Hon. Bernard A. Friedman.**

## COMPLAINT FOR DECLARATORY AND OTHER RELIEF

        Plaintiff Zurich American Insurance Company ("Zurich"), by and through its counsel,

Kupelian Ormond & Magy, P.C., for its Complaint states as follows:

1.  Zurich is a corporation organized and existing under the laws of the State of New York and has its principal place of business in the State of Illinois. Zurich is, and at all relevant time was, duly authorized to do business in the State of Michigan.

2.  Zurich is informed and believes and on that basis alleges that Defendant Amerisure Insurance Company is a Michigan corporation with its registered office and principal place of business in Michigan. Upon information and belief, at all relevant times, Amerisure was authorized to transact business and has transacted business in the State of Michigan.

3.  Zurich is informed and believes and on that basis alleges that Defendant Crown Corr, Inc. ("Crown Corr") is an Indiana corporation with its principal place of business in Highland, Indiana. Crown Corr is named as a defendant herein in order to bind it to any judgment entered or determination made by this Court.



## JURISDICTION AND VENUE

4.  Jurisdiction is appropriate in this matter pursuant to 28 U.S.C. § 1332 as complete diversity of citizenship exists between Zurich as plaintiff and Amerisure and Crown Corr as defendants, and because the amount in controversy exceeds $75,000, exclusive of costs, interest and legal expenses.

5.  Venue is appropriate in this matter pursuant to 28 U.S.C. §1391(a) because the events giving rise to the claims at issue arose in whole or part in the Eastern District of Michigan.

## THE UNDERLYING LAWSUIT

6.  This case arises out of an underlying lawsuit captioned *Lela Tompkins v. Detroit Metropolitan Airport d/b/a Wayne County Airport Authority, et al.*, case no. 08-019203-NO, filed in the Wayne County Circuit Court (the "Underlying Lawsuit"). Plaintiff's Complaint in

the Underlying Lawsuit was filed on or about December 22, 2008. The named defendants in Plaintiff's Complaint were Wayne County Airport Authority d/b/a Detroit Metropolitan Airport, Kimco Corporation, and Northwest Airlines. A copy of Plaintiff's Complaint, without exhibits, is attached hereto as Exh. A.

7. Plaintiff's Complaint in the Underlying Lawsuit alleges that on December 29, 2005, plaintiff Lela Tompkins slipped and fell while a business invitee at the Midfield Terminal, Main Tram Station, Detroit Metropolitan Airport ("Midfield Terminal"). Plaintiff's Complaint in the Underlying Lawsuit alleges that plaintiff Lela Tompkins slipped and fell on a liquid substance in the Midfield Terminal. Plaintiff's Complaint in the Underlying Lawsuit alleges that plaintiff Lela Tompkins sustained serious injuries as a result of her alleged slip and fall incident at the Midfield Terminal.

8. On or about February 9, 2009, Wayne County Airport Authority d/b/a Detroit Metropolitan Airport, Kimco Corporation, and Northwest Airlines filed a Third-Party Complaint ("Third-Party Complaint") in the Underlying Lawsuit against Hunt Construction Group, Inc. ("Hunt") and Crown Corr. A copy of the Third-Party Complaint, without exhibits, is attached hereto as Exh. B. The Third-Party Complaint alleged that:

> a. [Plaintiff Lela Tompkins'] injury occurred on December 29, 2005, at 6:30 a.m., when Plaintiff's slip and fall allegedly was caused by standing water or a leak from the roof above the Tram Station platform causing an unsafe condition to exist and which unsafe condition caused her to slip, fall and injury (sic) herself. Exh. B at ¶ 3.

b. [Plaintiff Lela Tompkins] alleges that the condition of water on the floor of the platform was caused by a continuous roof/ceiling leak covering the Midfield Terminal Tram Station Platform in a common area for pedestrian traffic on the platform. *Id.* at ¶ 4.

c. [Plaintiff Lela Tompkins] further alleges that the Defendant/Third Party Plaintiffs DTW and Northwest failed to properly design, construct, repair, inspect or maintain its premises to avoid any unsafe conditions and specifically with regard to the continuous roof/ceiling leak. *Id.* at ¶ 5.

d. [Hunt] was the general contractor for the construction and erection of the McNamara Terminal otherwise known as the Midfield Terminal at the Wayne County Airport. *Id.* at ¶ 6.

e. [Crown Corr] was a subcontractor to [Hunt] and responsible for the design, construction and fabrication of the roofing materials of the Midfield Terminal including but not limited to the area above the Midfield Terminal Tram Station platform. *Id.* at ¶ 7.

f. Hunt was negligent because it failed to supervise the work of its subcontractor Crown Corr during the construction phase, failed to test the roof materials before, at the time of and subsequent to their construction and installation at the Midfield Terminal, and failed to determine whether the roof itself was adequate and/or able to withstand the weather conditions in Michigan. *Id.* at ¶ 9.

    g.    Crown Corr was negligent because it failed to properly design and construct the roof in question including but not limited to testing the materials before, at the time of and subsequent to installation to ascertain that they could withstand and be able to provide support for the weather conditions in Michigan. *Id.* at ¶ 10.

    h.    The negligence of Hunt and Crown Corr caused plaintiff Lela Tompkins' injuries complained of in Plaintiff's Complaint filed in the Underlying Lawsuit. *Id.* at ¶ 11.

9.    Plaintiff's Complaint in the Underlying Lawsuit was amended once on or about December 29, 2009 ("Amended Complaint"). A copy of Plaintiff's Amended Complaint, without exhibits, is attached hereto as Exh. C. Plaintiff's Amended Complaint added as defendants Hunt and Crown Corr. Plaintiff's Amended Complaint contained allegations and a count of negligence against Hunt (Count IV) and allegations and a count of negligence against Crown Corr (Count V). As against both, Plaintiff's Amended Complaint alleges that the negligence of both was the cause of her alleged slip and fall injuries.

10.    On January 29, 2010, the Underlying Lawsuit was removed to the Federal District Court for the Eastern District of Michigan and given the case number 2:10-cv-10413-BAF-RSW.

11.    On or about February 5, 2010, Hunt filed a cross-complaint against Crown Corr in the Underlying Lawsuit ("Cross-Complaint"). Hunt's Cross-Complaint alleges that Hunt is entitled to express contractual indemnity from Crown Corr pursuant to an indemnity provision in the subcontract between Hunt and Crown Corr ("Indemnity Agreement"). Hunt's Cross-Complaint alleges that to the extent it is found liable to plaintiff Lela Tompkins, it is entitled to complete indemnity from Crown Corr pursuant to the Indemnity Agreement. Hunt's Cross-

Complaint also alleges that Crown Corr was required to obtain public liability insurance that named Hunt as an additional insured. A copy of Hunt's Cross-Complaint, without exhibits, is attached hereto as Exh. D.

12. Hunt tendered its defense and indemnity against the Underlying Lawsuit to Crown Corr pursuant to the Indemnity Agreement on multiple occasions, the first being May 26, 2009. Exh. E. To date Crown Corr has not agreed to defend and indemnify Hunt against the Underlying Lawsuit.

13. Zurich is informed and believes and on that basis alleges that when Crown Corr was served with the Third-Party Complaint in the Underlying Lawsuit, Crown Corr tendered its defense and indemnity to its general liability insurer, Amerisure. Zurich is further informed and believes and on that basis alleges that when Crown Corr was served with Hunt's Cross-Complaint in the Underlying Lawsuit, Crown Corr tendered its defense and indemnity to Amerisure.

## COMMON ALLEGATIONS - THE RELEVANT INSURANCE POLICIES

14. Zurich and Hunt entered into commercial general liability ("CGL") contract number GLO 464126901, effective September 1, 2005 to September 1, 2006 ("Zurich Policy"). A certified copy of the Zurich Policy is attached as Exh. F.

15. In pertinent part, the Zurich Policy provides the following language:

> 4. Other Insurance
>
> If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:
>
> * * *



    b.    Excess Insurance

This insurance is excess over:

* * *

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insured defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total amount of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not

>     bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

Exh. F.

16.   Zurich has been and is currently defending Hunt against the Underlying Lawsuit pursuant to the Zurich Policy. As of the date of filing this complaint, the fees and costs Zurich has incurred in defending Hunt against the Underlying Lawsuit total in excess of $*******.

17.   Zurich is informed and believes and on that basis alleges that Amerisure and Crown Corr entered into a policy of commercial general liability insurance that was effective on December 29, 2005 ("Amerisure Policy"), at the time of underlying plaintiff Lela Tompkins' alleged slip and fall incident at Midfield Terminal. A complete and accurate copy of the Amerisure Policy is in the possession of Amerisure.

18.   Zurich is informed and believes and on that basis alleges that Hunt qualifies as an additional insured on the Amerisure Policy either pursuant to a specific endorsement naming Hunt as an additional insured or pursuant to a general endorsement, the conditions of which Hunt satisfied. Zurich is further informed and believes that Hunt was an additional insured on the Amerisure Policy with respect to the allegations and damages alleged in the Underlying Lawsuit. Zurich is further informed and believes that pursuant to the relevant additional insured language on the Amerisure Policy, the Amerisure Policy was primary to any other insurance available to its additional insureds, including Hunt, while the other insurance was excess.

19.   Zurich is further informed and believes that pursuant to the Amerisure Policy and Hunt's status as an additional insured thereunder, as between Zurich and Amerisure, Amerisure had and has the primary duty to defend Hunt against the Underlying Lawsuit, and a potential

duty to indemnify Hunt, on a primary basis, for any liability Hunt has to pay damages to underlying plaintiff Lela Tompkins in the Underlying Lawsuit.

20. In the alternative, pursuant to Michigan law and the interaction of the language of the Zurich Policy and the Amerisure Policy, Zurich and Amerisure may share a coextensive duty to defend and indemnify, as necessary, Hunt against the Underlying Lawsuit.

21. To date, despite notice of its obligation to defend and, if necessary, indemnify Hunt against the Underlying Lawsuit, Amerisure has completely failed and refused to defend Hunt against the Underlying Lawsuit, despite its primary obligations to do so.

## COUNT I – EQUITABLE INDEMNIFICATION/REIMBURSEMENT

22. Zurich incorporates by reference paragraphs 1 through 21 above as if fully set forth herein.

23. As between Zurich and Amerisure, Amerisure has the primary duties, and Zurich the excess, to defend and, if necessary, indemnify Hunt against the Underlying Lawsuit. Zurich is currently defending Hunt against the Underlying Lawsuit, which remains pending. Amerisure has failed and refused to defend Hunt against the Underlying Lawsuit.

24. By virtue of any payments which Zurich has made and will make for fees and costs in defending Hunt against the Underlying Lawsuit, Zurich is entitled to indemnification/reimbursement from Amerisure for all of such payments plus interest as well as any other damages to which Zurich may be entitled arising out of Amerisure's failure and refusal to abide by its duties owed to Hunt under the terms of the Amerisure Policy.

25. To the extent Zurich ultimately becomes obligated to pay a settlement, in whole or in part, of the Underlying Lawsuit on Hunt's behalf prior to final judgment in the Underlying Lawsuit, or to the extent Zurich ultimately becomes obligated to indemnify Hunt against a final

judgment, in whole or in part, in the Underlying Lawsuit, Zurich is entitled to indemnification/reimbursement from Amerisure for all of such payments plus interest as well as any other damages to which Zurich may be entitled arising out of Amerisure's failure and refusal to abide by its duties owed to Hunt under the terms of the Amerisure Policy.

26. An actual, justiciable controversy exists between Zurich on the one hand and Amerisure and Crown Corr on the other regarding the existence of and extent, if any, of Amerisure's duties to defend and/or indemnify Hunt against the Underlying Lawsuit, and Zurich's entitlement to indemnification/reimbursement from Amerisure.

27. As a result of such controversy, the parties are unable to know or determine the extent, if any, of Amerisure's duties under the Amerisure Policy with respect to the Underlying Lawsuit. Accordingly, pursuant to 28 U.S.C. § 2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, Zurich seeks and the parties are entitled to a declaration of the parties' rights and obligations under their respective policies with respect to the Underlying Lawsuit, and a judicial interpretation of the rights and obligations of the parties to this action.

28. All parties, including Crown Corr, will be bound by the determination made by this Court.

WHEREFORE, Zurich prays as follows:

1. For a declaration that Zurich is entitled to indemnification/reimbursement from Amerisure of Hunt's defense fees and costs Zurich has incurred to date;

2. For a declaration that Amerisure must defend and, if necessary, indemnify Hunt against the Underlying Lawsuit on a primary basis going forward;

3. Costs of suit and attorneys fees as allowed under contract and law; and

4. Such other and further relief, including equitable relief, as the Court deems just and proper.

### COUNT II – CONTRIBUTION/REIMBURSEMENT

29. Zurich incorporates by reference paragraphs 1 through 28 above as if fully set forth herein.

30. If in the alternative Zurich and Amerisure share a coextensive duty to defend and indemnify, as necessary, Hunt against the Underlying Lawsuit, by virtue of any payments which Zurich has made and will make for fees and costs in defending Hunt against the Underlying Lawsuit, Zurich is entitled to contribution/reimbursement from Amerisure for all or part of such payments plus interest as well as any other damages to which Zurich may be entitled arising out of Amerisure's failure and refusal to abide by its duties owed to Hunt under the terms of the Amerisure Policy.

31. To the extent Zurich ultimately becomes obligated to pay a settlement, in whole or in part, of the Underlying Lawsuit on Hunt's behalf prior to final judgment in the Underlying Lawsuit, or to the extent Zurich ultimately becomes obligated to indemnify Hunt against a final judgment, in whole or in part, in the Underlying Lawsuit, Zurich is entitled to contribution/reimbursement from Amerisure for all or part of such payments plus interest as well as any other damages to which Zurich may be entitled arising out of Amerisure's failure and refusal to abide by its duties owed to Hunt under the terms of the Amerisure Policy.

32. An actual, justiciable controversy exists between Zurich on the one hand and Amerisure and Crown Corr on the other regarding the existence of and extent, if any, of



Amerisure's duties to defend and/or indemnify Hunt against the Underlying Lawsuit, and Zurich's entitlement to contribution/reimbursement from Amerisure.

33. As a result of such controversy, the parties are unable to know or determine the extent, if any, of Amerisure's duties under the Amerisure Policy with respect to the Underlying Lawsuit. Accordingly, pursuant to 28 U.S.C. § 2201, *et seq.*, and Rule 57 of the Federal Rules of Civil Procedure, Zurich seeks and the parties are entitled to a declaration of the parties' rights and obligations under their respective policies with respect to the Underlying Lawsuit, and a judicial interpretation of the rights and obligations of the parties to this action.

34. All parties, including Crown Corr, will be bound by the determination made by this Court.

WHEREFORE, Zurich prays as follows:

1. For a declaration that to the extent Zurich and Amerisure share a coextensive duty to defend and indemnify, as necessary, Hunt against the Underlying Lawsuit, Zurich is entitled to contribution/reimbursement for Amerisure's share of Hunt's defense fees and costs incurred to date;

2. For a declaration that Amerisure must defend Hunt against the Underlying Lawsuit coextensively with Zurich going forward;

3. For a declaration that to the extent that Zurich and Amerisure share a coextensive duty to defend and indemnify, as necessary, Hunt against the Underlying Lawsuit, Amerisure must pay its coextensive share of any settlement or indemnification of Hunt against the Underlying Lawsuit, or contribute/reimburse to Zurich Amerisure's coextensive share of any



settlement or indemnification that Zurich is forced to pay by Amerisure's failure and refusal to do so;

4. Costs of suit and attorneys fees as allowed under contract and law; and

5. Such other and further relief, including equitable relief, as the Court deems just and proper.

## COUNT III – CONTRACTUAL SUBROGATION

35. Zurich incorporates by reference paragraphs 1 through 34 above as if fully set forth herein.

36. Hunt has asserted that Zurich is obligated to defend and, if necessary, indemnify Hunt against the Underlying Lawsuit pursuant to the Zurich Policy. Zurich is currently defending Hunt against the Underlying Lawsuit, which remains pending. Amerisure has failed and refused to defend Hunt against the Underlying Lawsuit.

37. The Zurich Policy contains a provision ("Subrogation Provision") that provides as follows:

> **Transfer of Rights of Recovery Against Others To Us**
>
> <u>If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us.</u> The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

Zurich Policy, Section IV.8 (emphasis added).

38. To the extent Zurich pays or is found obligated to pay any amounts for the costs of defending and/or indemnifying Hunt against the Underlying Lawsuit, Zurich is contractually subrogated to the rights of Hunt to recover such amounts plus interest as well as any other

damages to which Hunt may be entitled from Amerisure, including, but not limited to, interest pursuant to MCL § 500.2006(4).

39. Thus, under the principles of contractual subrogation, Zurich is entitled to complete or partial reimbursement from Amerisure for any amount Zurich pays or may be obligated to pay for the defense and/or indemnity of Hunt against the Underlying Lawsuit, plus interest.

40. All parties, including Crown Corr, will be bound by the determination made by this Court.

WHEREFORE, Zurich prays as follows:

1. For a declaration that pursuant to the Subrogation Provision of the Zurich Policy, Zurich is contractually subrogated to Hunt's rights against Amerisure under the Amerisure Policy;

2. For a declaration that pursuant to Zurich's subrogated rights derived from Hunt, Zurich is entitled to complete or partial reimbursement from Amerisure for any amount Zurich pays or may be obligated to pay for the defense and/or indemnity of Hunt against the Underlying Lawsuit, plus interest;

3. Costs of suit, attorneys fees, and interest as allowed under contract and law; and

4. Such other and further relief, including equitable relief, as the Court deems just and proper.



                    Respectfully submitted,

                    KUPELIAN ORMOND & MAGY, P.C.


By:   s/Douglas M. Chapman
       PETER B. KUPELIAN (P31812)
       DOUGLAS M. CHAPMAN (P64469)
       Attorneys for Plaintiff Zurich American
       Insurance Company
       25800 Northwestern Highway, Suite 950
       Southfield, MI 48075
       (248) 357-0000
       dmc@kompc.com

Dated: April 27, 2011.
0249-2503/186874